[No. 28743-2-III.    Division Three.    October 13, 2011.]

CHERYL BECKER, *Appellant*, v. WASHINGTON STATE
UNIVERSITY ET AL., *Respondents*.

236

238

240

*Patricia S. Rose* and *Robert M. Boggs*, for appellant.

*Robert M. McKenna, Attorney General*, and *Kathryn M. Battuello, Assistant*, for respondents.

¶1 BROWN, J. — Washington State University (WSU) terminated Cheryl Becker from the experimental psychol-

ogy PhD program. She sued WSU, Howard Grimes, Jeff Joireman, Craig Parks, and Paul Whitney (collectively WSU), claiming multiple contract, tort, and constitutional claims. The trial court summarily dismissed her claims. On appeal, Ms. Becker contends genuine issues of material fact remain regarding whether WSU (1) breached a contract, (2) made negligent misrepresentations (promissory estoppel), (3) engaged in unlawful retaliation, (4) discriminated against her based on age, and (5) violated her civil rights. We affirm.

## FACTS

¶2 Ms. Becker entered WSU's PhD experimental psychology program in fall 2001. She received financial assistance through a nonguaranteed part-time graduate assistantship as a teacher's assistant (TA) for seven of her eight semesters. Ms. Becker held a master's degree and was expected to complete her PhD within four years. She was required to "establish and maintain a cumulative GPA [grade point average] of 3.0 or above" for continued enrollment. Clerk's Papers (CP) at 345. Ms. Becker was required to complete 72 credit hours of course work and research, preliminary examination (prelims), and a dissertation. Research involved 20 hours of related activity a week in addition to her TA work.

¶3 Prelims must be successfully completed before the sixth semester of graduate study so the formal dissertation process can begin. Students engaged in formal dissertation research register for "Psych 800" credits. The Graduate Student Code states students have a right "[t]o be governed by clearly stated and justifiable academic procedures, rules, and regulations." CP at 559.

¶4 During the 2001-2002 academic year, Paul Whitney, chair of the Psychology Department, agreed to be her advisor. In January 2002, Ms. Becker switched to a TA position with Professor Robert Patterson. Toward the end of

the semester she talked with Professor Lisa Fournier about working on a multidisciplinary project. Professor Fournier was collaborating on the project with Kathy Beerman, a professor in the Department of Food Sciences apparently controlling the project. In May 2002, Ms. Becker received Professor Whitney's agreement for her to work with Professor Fournier. Ms. Becker switched to Professor Fournier as her faculty advisor. Ms. Becker received her first annual student evaluation indicating she was adjusting to the program but expressing concerns about her self-confidence.

¶5 Ms. Becker's third semester started in August 2002. She became dissatisfied working with Professor Fournier when advised that Professor Beerman had assigned another graduate student to work on the multidisciplinary project. Despite Professor Fournier's assurances that this change would not affect their preparation for her prelims or a dissertation project, Ms. Becker decided to abandon her work on the project because it no longer "provide[d] [her] with tangible benefits." CP at 91. She decided to switch to her third faculty advisor, Professor Jeff Joireman.

¶6 At the end of her fourth semester she received her second annual student evaluation from the program faculty. It partly states, "There exists some concern about your emotional involvement in events. Specifically, some faculty feel that you have difficulty moving past negative experiences .... Some faculty also expressed concern that you are now on your third advisor in two years." CP at 355.

¶7 Ms. Becker's fifth semester began in August 25, 2003. She accepted funding through a TA position with Professor Joireman. Per her program requirements Ms. Becker needed to complete her prelims this semester. Professor Joireman encouraged her to get them done. In November 2003, she alerted her doctoral committee she wanted to push the examinations to February 2004 (in her sixth semester).

¶8 Ms. Becker's sixth semester began in January 2004. On February 12 she requested a second time-extension to complete preparation for her prelims into the fall semester of 2004 (her seventh semester). On February 24, 2004, Professor Whitney called a meeting to discuss Ms. Becker's academic progress. Ms. Becker believed she did not have adequate time to prepare for her prelims because her TA responsibilities exceeded 20 hours a week. Ms. Becker inquired whether she was being treated differently because of her age. She refused to sign a contract devised to help her stay on track with her prelims preparation.

¶9 Ms. Becker's third annual faculty evaluation occurred on April 19, 2004:

> [T]he faculty are very concerned about your progress and lack thereof. In fact, the majority opinion among the faculty was to terminate your assistantship. . . . [T]he faculty were willing to go along with [the proposed plan for your doctoral studies] only under the condition that a specific target date be set for completion of your prelim ballot meeting. After much discussion the faculty agreed that the meeting should occur no later than 29 October 2004, which is the last Friday in October. . . . This ballot meeting deadline is not negotiable, and if it is not met, the Experimental faculty will terminate your appointment effective 18 December 2004 (i.e., the day after finals week).

CP at 358. Professor Patterson gave Ms. Becker a copy of the written summary evaluation and individual faculty comments. He told her a firm deadline existed for her prelims and if she failed to complete them by the deadline she would be dropped from the program. Ms. Becker complained to WSU's Center for Human Rights, alleging age discrimination and her other concerns regarding faculty treatment.

¶10 Ms. Becker admits she did not do any work to prepare for her prelims during the summer or fall of 2004 because she was waiting to hear about her complaint and was "completely blocked" from doing so. CP at 825. Program

Director Craig Parks sent her several memoranda indicating the program was expecting her to meet the nonnegotiable October 29, 2004 deadline. Ms. Becker did not directly respond. Ms. Becker's attorney wrote WSU, "Ms. Becker's principal objectives are to correct her education records and to complete . . . the program." CP at 909.

¶11 Ms. Becker did not take her prelims in the fall 2004 semester (her seventh semester). On October 12, 2004, Mr. Parks notified Ms. Becker in writing she would be terminated at the end of the semester because she failed to sit for her prelims in accordance with the program faculty's deadline. At the end of the fall semester, Ms. Becker received an "S" in Psych 600 and an "X" in Psych 800. On January 4, 2005, Professor Whitney notified Graduate School Dean Howard Grimes that the faculty recommended Ms. Becker be dismissed.

¶12 Dean Grimes wrote to Ms. Becker on January 7, 2005, notifying her of the faculty's recommendation and an opportunity to respond directly to him. They met on January 14. Dean Grimes proposed conditions for Ms. Becker's continued enrollment, preparation of a one-page synopsis of her proposed dissertation project, and identifying a doctoral committee she could work with.

¶13 In February 2005, Ms. Becker left the WSU campus and returned to her home. On April 14, 2005, Mr. Parks wrote to Ms. Becker, asking her to identify individual faculty to provide input for her annual student evaluation for the 2004-2005 academic year. She did not respond. Ms. Becker next received the following evaluation:

> During the past year you ignored program-imposed deadlines. You have made no discernible progress in the past year on completing the preliminary examinations. You did not consult with your advisor . . . on issues related to your program of study, preliminary examinations, or research plans.
>
> Given your total lack of progress, a grade of 'F' was assigned for the Psych 800 credits.

CP at 362. After receiving an "F" in Psych 800, Ms. Becker's cumulative GPA was 2.21.

¶14 On May 12, 2005, the graduate school issued written notice to Ms. Becker that she was being disenrolled because her cumulative GPA had fallen below the 3.0 mandatory minimum for continued enrollment and provided reinstatement information. Ms. Becker did not respond; WSU cancelled Ms. Becker's enrollment.

¶15 Ms. Becker sued in March 2007, alleging breach of contract, promissory estoppels, age discrimination, and retaliation under chapter 49.60 RCW, the Washington Law Against Discrimination (WLAD); age discrimination in violation of 42 U.S.C. § 6101, the Age Discrimination Act of 1975 (ADA), and RCW 28B.04.120; civil rights claims under 42 U.S.C. § 1983; negligent infliction of emotional distress; negligent misrepresentation; and defamation. WSU successfully requested summary judgment dismissal of all claims. Ms. Becker appealed.

## ANALYSIS

### A. Breach of Contract

¶16 The issue is whether the trial court erred in summarily dismissing Ms. Becker's breach of contract claim. She contends WSU breached its obligations to provide clear guidelines regarding academic expectations and procedures for evaluation.

¶17 We review an order of summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," demonstrate no genuine issues of material fact remain, entitling the moving party to judgment as a matter of law. CR 56(c). The nonmoving party may not rely on speculation, argumentative assertions, "or in having its affidavits con-

sidered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

■ ¶18 The essential elements of a contract are subject matter, parties, promise, terms and conditions, and price or consideration. *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 31, 959 P.2d 1104 (1998) (quoting *Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 105, 108, 702 P.2d 459 (1985)). A contract may be oral or written, and may be implied. *Hoglund v. Meeks*, 139 Wn. App. 854, 870, 170 P.3d 37 (2007). Because Washington follows the objective manifestation test for contracts, the parties must objectively manifest their mutual assent and the terms assented to must be sufficiently definite. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78, 94 P.3d 945 (2004). The party asserting the existence of such a contract, whether express or implied, bears the burden of proving each essential element, including the existence of a mutual intention. *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957). "[B]are assertions of ultimate facts and conclusions of fact are alone insufficient to defeat summary judgment." *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 852, 22 P.3d 804 (2001).

■ ¶19 Washington courts recognize "the relationship between a student and a university is primarily contractual in nature," with the " 'specific terms to be found in the university bulletin and other publications.' " *Marquez v. Univ. of Wash.*, 32 Wn. App. 302, 305, 648 P.2d 94 (1982) (quoting *Peretti v. Montana*, 464 F. Supp. 784, 786 (D. Mont. 1979), *rev'd on other grounds*, 661 F.2d 756, 757 (9th Cir. 1981)). But, while certain elements of the law of contracts may provide a framework to analyze a problem, " '[t]his does not mean that "contract law" must be rigidly applied in all its aspects . . . . The student-university relationship is

unique, and it should not be and can not be stuffed into one doctrinal category.'" *Id.* at 306 (quoting *Lyons v. Salve Regina Coll.*, 565 F.2d 200, 202 (1st Cir. 1977)). Given the wide latitude and discretion afforded by courts to educational institutions in academic matters, and the fact that such agreements are often not integrated, "the standard is that of reasonable expectations—what meaning the party making the manifestation . . . should reasonably expect the other party to give it." *Id.*

¶20 WSU's academic expectations for successful completion of a PhD in experimental psychology were set out in the "Graduate School Program Description and Policies and Procedures": "The preliminary examination must be completed and passed before the Ph.D. dissertation can be formally begun" and "The preliminary examination must be taken before the sixth semester of graduate study (summers excepted)." CP at 285-86. The "student must have a 3.0 cumulative GPA and a 3.0 program GPA." CP at 344. "The enrollment of a graduate student who fails to establish and maintain a cumulative GPA of 3.0 or above at the end of two semesters, one semester and one summer session, or two summer sessions will be terminated." CP at 345.

¶21 Completing her preliminary examinations before the start of her sixth semester was a critical prerequisite to Ms. Becker's moving forward with her PhD program. Ms. Becker failed to schedule her prelims as expected. WSU attempted to address her concerns. She was granted two extensions and offered the assistance of a contract to structure her allocation of time between her assistantship, research, and course work, and preparation for prelims. In the spring of 2005, Ms. Becker enrolled as a full-time student, accepted full funding through a TA graduate assistantship, and she registered for 16 Psych 800 credits. But she left campus and received a failing grade for Psych 800. Her cumulative GPA fell below 3.0. She was notified she would be terminated for failing to maintain the minimum cumulative GPA. She was terminated and did nothing

to seek reinstatement. Under these circumstances, WSU set forth and acted on its announced expectations without Ms. Becker seeking reinstatement. The trial court properly dismissed this claim.

## B. Negligent Misrepresentation and Promissory Estoppel

¶22 The issue is whether the trial court erred in dismissing Ms. Becker's negligent misrepresentation and promissory estoppel claims. Ms. Becker contends Professor Fournier's actions constitute negligent misrepresentation or promises that stalled Ms. Becker's progress toward her degree and negatively impacted her reviews.

¶23 Negligent misrepresentation requires showing "(1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages." *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007) (citing *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002)).

¶24 A prima facie case for negligent misrepresentation depends upon evidence of false representations, detrimental reliance, and a causal relationship with the plaintiff's claimed damages. *Baik*, 147 Wn.2d at 545. Professor Fournier's statements were not made to provide guidance in a business transaction; they were made in an educational context. Further, no evidence suggests Professor Fournier made false representations. Ms. Becker shows no evidence showing Professor Fournier's offer of mentorship, a research assistantship, the opportunity for publications, and a segue to a dissertation topic was insincere at the time it was made. Undisputedly, Professor Fournier

advised her that Professor Beerman's student would be joining the team and what the implications were as soon as she learned of this change. Given the undisputed evidence, we conclude Ms. Becker fails to establish trial court error.

¶25 Promissory estoppel has five elements: " '(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.' " *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 171-72, 876 P.2d 435 (1994) (alteration in original) (internal quotation marks omitted) (quoting *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980)). Ms. Becker's promissory estoppel claim focuses on her interactions with Professor Fournier about her role in the multidisciplinary project.

¶26 It appears Professor Fournier, as a subordinate faculty member on the project, lacked authority to make promises regarding authorship. But taking the evidence in the light most favorable to Ms. Becker, the most Professor Fournier promised was an opportunity for authorship on publications if she did the work. Ms. Becker's promissory estoppel claim fails because she lacks evidence of a promise that " 'manifest[s] [an] intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.' " *McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 117, 992 P.2d 511 (1999) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2 (1981)). The promise must be made by someone who is authorized to fulfill the terms of the promise. *Id.* at 118. Because Ms. Becker cannot establish each of the essential elements of a promissory estoppel claim, the trial court properly dismissed this claim.

## C. Retaliation

¶27 The issue is whether the trial court erred in summarily dismissing Ms. Becker's retaliation claim. She contends WSU retaliated against her because she filed an age discrimination complaint with WSU's Center for Human Rights.

¶28 Ms. Becker sued for retaliation under RCW 49.60.210(1), which provides, "It is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices" forbidden under chapter 49.60 RCW. To establish a prima facie case of retaliation, an employee must show (1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) a causal link exists between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005). Each element must be proved. *Id.*

¶29 Assuming without deciding that a student may raise a retaliation claim under RCW 49.60.210(1), Ms. Becker's claim fails because she cannot establish causation. Her dismissal from the program was based on legitimate, nondiscriminatory reasons. To establish the causal nexus element of her retaliation claim, Ms. Becker must prove retaliation for her age discrimination complaints was a substantial factor motivating her academic dismissal. *Allison v. Hous. Auth.*, 118 Wn.2d 79, 821 P.2d 34 (1991). While Ms. Becker asserts WSU gave her a failing grade in May 2005 because she complained about age discrimination, Ms. Becker registered for Psych 800 during the spring semester 2005 and did not complete any work. While she claims she could not complete the work while her complaint was being investigated, she fails to show a causal link between her substandard performance and the claimed discriminatory intent to retaliate. *Hsi H. Chen v. State*, 86 Wn. App. 183,

191, 937 P.2d 612 (1997). And, Ms. Becker failed to take any action to seek reinstatement.

¶30 Accordingly, we conclude Ms. Becker fails to establish a prima facie retaliation case under chapter 49.60 RCW. The trial court did not err.

## D. Age Discrimination

¶31 The next issue is whether the trial court erred in dismissing Ms. Becker's age discrimination claim. Ms. Becker contends she established a prima facie case of discrimination under both federal and state statutes.

¶32 42 U.S.C. § 6104(e)(1) requires any private civil action under the ADA to be brought in a United States District Court for the district in which the recipient is found or transacts business. Prior to filing suit, an individual must exhaust administrative remedies and provide 30 days' notice by registered mail to the secretary of the United States Department of Health and Human Services, the attorney general of the United States, the head of the granting agency (here, the United States Department of Education), and the grant recipient (here, WSU). 42 U.S.C. § 6104(e)(1), (f). The notice must state the alleged violation of the ADA, the relief requested, the court in which the action shall be brought, and whether attorney fees will be demanded if the plaintiff prevails. 42 U.S.C. § 6104(e)(2).

¶33 Ms. Becker filed her ADA claim in state court rather than United States District Court. Additionally, the record does not show she satisfied the statutory notice prerequisites. Dismissal of a civil cause of action under the ADA is the appropriate remedy when a plaintiff fails to satisfy the statutory prerequisites. *Curto v. Smith*, 248 F. Supp. 2d 132, 145 (N.D.N.Y. 2003), *aff'd*, 93 F. App'x 332 (2d Cir. 2004). The trial court "lacks subject matter jurisdiction over the suit if these prerequisites are not fulfilled." *Id.* Because the trial court lacked jurisdiction, it properly dismissed Ms. Becker's ADA claim.

¶34 Turning to Ms. Becker's state claim, under the WLAD, it is unlawful for an employer to "discharge or bar any person from employment because of age." RCW 49.60-.180(2). The employee has the initial burden of presenting a prima facie case of age discrimination. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988). To establish a prima facie case of age discrimination in employment, the employee must show (1) she was within the statutorily protected age group of employees 40 years of age or older, (2) she was discharged, (3) she was doing satisfactory work, and (4) she was replaced by a significantly younger person. RCW 49.44.090(1); *McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006).

¶35 Once the employee establishes a prima facie case of age discrimination, the burden of production shifts to the employer, who must show a legitimate, nondiscriminatory reason for its conduct. *See also Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180-82, 23 P.3d 440 (2001), *overruled on other grounds by McClarty*, 157 Wn.2d 214. If the employer meets its burden of production, the employee must then show the employer's proffered reason was mere pretext for discrimination. *Domingo v. Boeing Emps.' Credit Union*, 124 Wn. App. 71, 88, 98 P.3d 1222 (2004).

¶36 An employee can demonstrate pretext with evidence showing (1) the employer's reasons have no basis in fact, (2) the employer was not actually motivated by the reasons, or (3) the reasons are insufficient to prompt the adverse employment decision. *Id.* To meet this burden, the employee "is not required to produce evidence beyond that already offered to establish a prima facie case" or "direct ('smoking gun') evidence." *Sellsted v. Wash. Mut. Sav. Bank*, 69 Wn. App. 852, 860, 851 P.2d 716 (1993) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)), *overruled on other grounds by Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995). A court may grant summary judgment "when the 'record conclusively revealed

some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.' " *Milligan v. Thompson*, 110 Wn. App. 628, 637, 42 P.3d 418 (2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

¶37 In *Kilian v. Atkinson*, 147 Wn.2d 16, 50 P.3d 638 (2002), our Supreme Court held that the clear and unambiguous language of WLAD limited age discrimination claims to the employment setting. The court relied on RCW 49.60.030, which sets forth the civil causes of action for discrimination that are authorized pursuant to WLAD. This statutory provision designates race, creed, color, national origin, sex, and disability as classifications entitled to protection. The court stated, "Even under liberal construction of chapter 49.60 RCW, this court will not adopt a strained or unrealistic interpretation of the statutes in that chapter. Adding 'age' to the list of protected classes under RCW 49.60.030(1) would result in a strained interpretation of the statute, and the court would then be engaging in legislation." *Id.* at 27. Similarly, RCW 49.60.400(1) omits "age" from the list of classifications protected from discrimination at public colleges and community colleges. The provisions in the statute that recognize a civil cause of action for age discrimination are RCW 49.60.180 and RCW 49.44.090, which provide that it is an unfair labor practice for employers to hire, discharge, or otherwise discriminate against employees who are 40 years of age or older.

¶38 This case arises out of a student-university academic relationship. Ms. Becker argues it was an employment relationship because the assistance WSU provided for her education included a part-time employment position as TA. But, her TA position was conditioned upon full-time enrollment, maintenance of a 3.0 GPA, and satisfactory progress with program requirements. Therefore, when WSU

disenrolled Ms. Becker it was for failure to make satisfactory academic progress, a legitimate basis for dismissal. In short, Ms. Becker was not performing satisfactorily. Accordingly, Ms. Becker cannot bring an age discrimination claim in this setting; moreover, she cannot move forward with her claim because her dismissal was the result of a legitimate, nondiscriminatory academic decision. Given our analysis, the trial court did not err in summarily dismissing this claim.

## E. Civil Rights Claim

¶39 The issue is whether the trial court erred in dismissing Ms. Becker's 42 U.S.C. § 1983 claim. She contends WSU's actions were arbitrary, capricious, and in bad faith, thereby negating the qualified immunity defense.

¶40 Government officials are protected from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Moran v. State*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "[T]he allegations of blatant disregard for established regulations give rise to an inference of arbitrary or capricious action." *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993). Whether a government official enjoys qualified immunity is a purely legal question. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

¶41 The "driving force" behind qualified immunity is that " 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." *Anderson v. Creighton*, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (quoting *Harlow*, 457 U.S. at 818-19). The defense is applied quite broadly, affording protection to all those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.

Ct. 1092, 89 L. Ed. 2d 271 (1986). Ms. Becker must establish a violation of due process, equal protection, or free expression to avoid qualified immunity under 42 U.S.C. § 1983.

¶42 The touchstone of due process is protection of the individual against arbitrary government actions, whether in denying fundamental procedural fairness (procedural due process) or in exercising power arbitrarily, without any reasonable justification in the service of a legitimate governmental objective (substantive due process). *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). For Fourteenth Amendment due process protections, Ms. Becker must first demonstrate her academic dismissal deprived her of a liberty interest or a property interest recognized by state law. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978). Ms. Becker offers no authority to support her assertion that WSU's decision to dismiss her for academic reasons deprives her of a liberty interest. Regardless, the courts have generally declined to find deprivation of a liberty interest where a dismissal is academic as opposed to disciplinary. *Id.* at 83-91. Moreover, Ms. Becker fails to provide authority for her assumption that state law recognizes a property interest in continued enrollment in a PhD program at a public university.

¶43 The procedural due process requirements of the Fourteenth Amendment entitle Ms. Becker to notice of WSU's dissatisfaction with her academic progress and the risk this posed to her continued enrollment. *Id.* at 85. The record shows WSU provided written annual reviews, communication about her progress, and warnings. Ms. Becker's disagreement with WSU's assessment does not generate a material issue of fact regarding whether she was warned about the academic consequences of her failure to satisfy academic expectations.

¶44 Ms. Becker argues she was not provided clear directions regarding the circumstances under which she could be removed from the program. But the program description

clearly stated that doctoral students must complete their prelims by the end of their fifth semester and maintain a certain grade point average. Additionally, Ms. Becker's annual evaluations from the program faculty emphasized the importance of completing her prelims and, after granting two extension requests, set a firm deadline for the start of her seventh semester. The program also offered to assist her with preparation by instituting a student/advisor contract that outlined a schedule providing ample time for prelims study. She refused to sign the contract, refused to study for her prelims, failed to schedule these required examinations in the fall 2004 (seventh semester), and failed to maintain the minimum grade point average without any action toward reinstatement. Under these circumstances, Ms. Becker fails to provide sufficient evidence supporting her claims for violation of her procedural and substantive due process rights.

¶45 Ms. Becker's equal protection claim appears predicated upon her failed age discrimination allegations. Even so, the Ninth Circuit has ruled the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621-634) provides the exclusive federal remedy for claims asserting age discrimination in the workplace, foreclosing recovery for age discrimination in a § 1983 claim predicated upon the equal protection clause. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009). And because Ms. Becker offers no evidence of age-based disparate treatment and does not otherwise establishes an abuse of discretion or arbitrary or capricious conduct on the part of WSU or its faculty, she cannot establish that her constitutional right to equal protection was violated. *Marquez*, 32 Wn. App. at 309.

¶46 To establish a First Amendment claim in the student speech context, Ms. Becker must show (1) she engaged in constitutionally protected activity, (2) WSU's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in

WSU's conduct. *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009). If Ms. Becker establishes those elements, WSU remains entitled to summary judgment if it shows it would have taken the same action even in the absence of her protected conduct. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750 (9th Cir. 2001).

¶47 Here, Ms. Becker claims a First Amendment violation because she raised complaints against WSU faculty and administrators and was disenrolled on academic grounds as a pretext. Ms. Becker's concerns were personal rather than public. And, she fails to establish the requisite causal nexus between WSU's academic decision to terminate her enrollment in May 2005 and her various complaints. She provides no material evidence from which a reasonable jury could conclude her complaints were a substantial motivating factor in the decision to disenroll her, or that WSU would not have disenrolled her in the absence of her complaints. In the absence of such evidence, Ms. Becker cannot establish her claimed First Amendment violation.

¶48 Based on the above, Ms. Becker provides no competent evidence that would establish a violation of her constitutional rights. Consequently, WSU is entitled to qualified immunity. The trial court's decision to summarily dismiss Ms. Becker's claims under 42 U.S.C. § 1983 was appropriate.

¶49 Affirmed.

KORSMO, A.C.J., and SWEENEY, J., concur.

Reconsideration denied December 20, 2011.

Review denied at 173 Wn.2d 1033 (2012).