IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| AMY MCFARLAND, | ) ) ) | No. 39550-2-III |
| Appellant, | ) ) | |
| v. | ) | |
| PACIFIC NORTHWEST UNIVERSITY OF HEALTH SCIENCES, | ) ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| Respondent. | ) | |

FEARING, J. — Amy McFarland appeals from a summary judgment dismissal of her employment discrimination suit against Pacific Northwest University of Health Sciences (PNWU). Because McFarland failed to file any contravening affidavits to the summary judgment motion, because the superior court granted McFarland's only motion for a continuance, and because the uncontroverted facts demand judgment for PNWU, we affirm.

## FACTS

Amy McFarland sues her former employer, PNWU. McFarland served as assistant director of Roots to Wings and as director of Development and Preparatory

Pathways, two academic programs at PNWU, an osteopathic physician school in Yakima. PNWU seeks to train health care providers for service to rural and medically underserved communities, and the university emphasizes diversity and inclusion through its Chief Diversity and Inclusion Officer, Mirna Ramos-Diaz, M.D. The two programs served by McFarland aim to inspire Native Americans and Hispanic youths to pursue careers in medicine and science.

Mirna Ramos-Diaz knew Amy McFarland before the two became colleagues at PNWU, when McFarland worked for the Puyallup Tribal School. After McFarland quit the tribal school, Ramos-Diaz encouraged her to apply to lead the newly funded collaborative program between PNWU and the Yakama Nation Tribal School.

PNWU hired Amy McFarland in July 2020, even though the school did not budget for her position in the July 1, 2020 to June 30, 2021 fiscal budget. McFarland's employment was thus contingent on future funding.

When, in January through April 2021, PNWU administrators prepared the July 2021 to June 2022 budget, administrators noted that the university had not planned for Amy McFarland's position to become permanent. As part of the new budget, PNWU decided not to provide permanent funding for McFarland's position. On April 1, 2021, PNWU's executive assistant to the President highlighted in a summary of a budget meeting that the financial shortfall meant no "job security" for McFarland.

From January to June 2021, Amy McFarland understood that her role at PNWU might be terminated. In January 2021, she inquired about her job's security with the Human Resources Department due to uncertain funding, and the department responded that her position might end on June 30, 2021. As a temporary measure, PNWU President Michael Lawler used his $50,000 discretionary fund to extend McFarland's employment to November 2021. Still, according to PNWU's chief financial officer, PNWU did not assure McFarland of employment past November unless the university secured external funding. Mirna Ramos-Diaz actively pursued additional funding. The National Institute of Health, on June 16, 2021, provided a limited grant insufficient to fully support McFarland's role for the following fiscal year. On June 22, PNWU budget analyst Jordan Arreola wrote that McFarland's position would terminate by early 2022.

On July 7, 2021, Amy McFarland notified PNWU that she was pregnant and intended to take maternity leave after her child's birth. McFarland anticipated beginning leave on August 9.

On July 28, 2021, Amy McFarland gave birth. She then took leave until November 1. When McFarland returned to work on November 1, 2021, Mirna Ramos-Diaz warmly received her. Ramos-Diaz wrote: "This is a little note to welcome you back! May you be full of health and joy! Though I wanted to talk and hear all about [name deleted] and you, I could not communicate with you to respect your time off on FMLA." Clerk's Papers (CP) at 89 (emphasis added) (alteration added). Later that day,

3

McFarland thanked the PNWU Human Resources staff for its support and guidance during her maternity leave.

Three days later, Amy McFarland requested a meeting with PNWU's Chief Academic Officer Edward Bilsky and Chief Operating Officer Frank Alverez to discuss her concerns regarding her position. On November 12, 2021, Alverez met with McFarland and confirmed that the lack of a budget for her position had not changed.

A budget reevaluation in January 2022 confirmed a $49,588.28 shortfall in funding for Amy McFarland's employment position. On February 26, 2022, PNWU terminated McFarland from employment because of the elimination of her position resulting from a budget shortfall.

PROCEDURE

In April 2022, Amy McFarland sued PNWU. Her complaint alleged gender discrimination, retaliation for reporting discrimination, and a violation of the Washington Family Medical Leave Act (WFMLA) ch. 49.78 RCW. McFarland's legal counsel withdrew on October 3, 2022. PNWU paused case activities for a month to allow McFarland time to secure new representation. She failed. PNWU filed a summary judgment motion on November 10, 2022. PNWU scheduled the motion hearing for December 14, 2022. PNWU's attorney provided McFarland a copy of CR 56 to help McFarland understand the summary judgment process.

Amy McFarland did not submit a response by the deadline required under CR 56(c). Two days before the hearing date, McFarland requested a continuance, citing her lack of legal representation and recent family bereavements. When asked by the superior court, during the December 14 hearing, how much additional time she needed, McFarland answered "a little more than a month, given the holidays." Report of Proceedings (RP) at 4. Despite her failure to oppose PNWU's motion and her request contravening the requirements of CR 56(f), the court directed that the motion be rescheduled for a date in late January. PNWU's attorney and McFarland agreed to a new hearing date of January 27, 2023.

Under court rules, Amy McFarland needed to file responsive summary judgment pleadings by January 17, 2023. She submitted her response to the court on that date. Nevertheless, the copy mailed to PNWU's attorney did not arrive until January 19. McFarland's response lacked any affidavits. The response primarily comprised unauthenticated documents.

PNWU submitted a motion to strike Amy McFarland's response because of its untimeliness and noncompliance with CR 56(e). At the January 27, 2023 hearing, the trial court struck McFarland's response as untimely and inadmissible due to the absence of affidavits required under CR 56(e). McFarland did not ask for an additional continuance. She did not seek additional time to conduct discovery. The court granted PNWU's motion for summary judgment

LAW AND ANALYSIS

On appeal, Amy McFarland seeks to overturn the summary judgment dismissal of her employment claim on five grounds. First, the dismissal violated her right to discovery. Second, the court erred when failing to, on its own, grant a continuance of the January 27 hearing date. Third, the trial court erred when failing to accommodate her appearing without an attorney. Fourth, the superior court erred when striking her summary judgment response. Fifth, the trial court erred when granting PNWU's summary judgment motion on its merits. We reject each ground.

Discovery

Amy McFarland for the first time on appeal, contends the superior court should have afforded her time to conduct discovery before the court entertained PNWU's summary judgment motion. She does not explain why she had not previously conducted discovery. She does not delineate the discovery needed. When she sought a continuance on December 14, 2022, she did not mention any need for discovery.

CR 56(f) declares:

> When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Boldface omitted.)  The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact.  *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 90, 838 P.2d 111 (1992); *Building Industry Association of Washington v. McCarthy*, 152 Wn. App. 720, 742-43, 218 P.3d 196 (2009).  Finally, we generally do not review an argument raised for the first time on appeal.  RAP 2.5(a); *R.K. v. United States Bowling Congress*, 27 Wn. App. 2d 187, 201, 531 P.3d 901 (2023).

Hearing Continuance

Amy McFarland argues that the trial court should not have proceeded with summary judgment due to the family health crises she was managing and her difficulty in securing new representation.  She asserts that the original continuance granted by the trial court on December 14, 2022, did not afford her sufficient time to respond effectively.

CR 56(f) allows the trial court to order a continuance for further discovery when "it appear[s] from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition."  A court's denial of a CR 56(f) motion is reviewed for abuse of discretion.  *Coggle v. Snow*, 56 Wn. App. 499, 504, 784 P.2d 554 (1990).

The superior court did not abuse its discretion. At the December 22, 2022 summary judgment motion hearing, the trial court specifically inquired, "So, how much time are you asking for?" RP at 4. Amy McFarland responded, "I believe about a month should be sufficient. A month—a little more than a month, given the holidays." RP at 4. The trial court does not abuse its discretion to the prejudice of a party when the court grants the party's request. If McFarland later realized more time was needed to retain counsel, gather evidence, or address the difficulties arising from her father's hospitalization and sudden death, she could have requested another continuance before or during the hearing on January 27, 2023. She did not.

A trial court has no duty to continue a summary judgment motion hearing sua sponte. *MRC Receivables Corp. v. Zion*, 152 Wn. App. 625, 629, 218 P.3d 621 (2009). Also, we generally do not review an argument raised for the first time on appeal. RAP 2.5(a); *R.K. v. United States Bowling Congress*, 27 Wn. App. 2d 187, 201, 531 P.3d 901 (2023).

Pro Se Litigant

Amy McFarland argues that the trial court should have overlooked her failure to request a lengthier continuance at the first hearing, disregarded her decision not to move for another continuance, and excused her noncompliance with CR 56(e) and ER 901 for the sake of fairness. She highlights her inability to procure counsel.

Canon 2.3 of the Code of Judicial Conduct recognizes that judges must make reasonable accommodations for unrepresented litigants to prevent their cause from being inhibited by a lack of legal knowledge. Nevertheless, accommodations must not give the unrepresented litigant an unfair advantage. After being granted the continuance she sought and after being provided with a copy of CR 56, further accommodations would have given McFarland an unfair advantage. Moreover, caselaw establishes that pro se litigants in civil proceedings are bound by the same rules of procedure and substantive law as attorneys. *State Farm Mutual Automobile Insurance Co. v. Avery*, 114 Wn. App. 299, 310, 57 P.3d 300 (2002); *Westberg v. All–Purpose Structures Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

Merits of Summary Judgment Motion

When reviewing an order for summary judgment, this court engages in the same inquiry as the trial court. *Hanson v. Carmona*, 1 Wn.3d 362, 369, 525 P.3d 940 (2023). Summary judgment is appropriate under CR 56 "when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citations omitted). Importantly, when opposing a motion for summary judgment:

> The nonmoving party may not rely on speculation, argumentative assertions, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific

9

facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.

*Becker v. Washington State University*, 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (citation and internal quotations omitted). "A 'material fact' is a fact upon which the outcome of the litigation depends, in whole or in part." *Barber v. Bankers Life & Casualty Co.*, 81 Wn.2d 140, 144, 500 P.2d 88 (1972) (citations omitted). We review all evidence in the light most favorable to the nonmoving party. *Morris v. McNicol*, 83 Wn.2d 491, 495, 519 P.2d 7 (1974).

Amy McFarland claims that PNWU failed to address a hostile work environment created by her superiors stemming from her pregnancy and that PNWU administrators used a budget deficit as a pretext to terminate her employment. But in responding to PNWU's motion for summary judgment, McFarland failed to comply with CR 56(e) which reads, in part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Separate from the requirement in CR 56(e) that supporting affidavits must be made on personal knowledge, ER 901 requires that documents be authentic. *In re Estate of Ferara*, 540 P.3d 194, 201 (Wash. Ct. App. 2023). Authentication ensures that

documents, on which a litigant relies, are what they are purported to be. *In re Estate of Ferara*, 540 P.3d 194, 201 (Wash. Ct. App. 2023).

The superior court commented during the summary judgment hearing:

> I read the whole thing [Amy McFarland's response]. And then, at the end of it, because there are all these exhibits, I looked for the affidavit that would say what the exhibits are and where they came from and somehow authenticate them. I did not find one. And, there's obviously a lot of information in the brief that might be personal to Ms. McFarland. So, I expected to see an affidavit or declaration from her. And I did not see one. And I was, at that point, a little confused.

RP at 12.

We do not know whether Amy McFarland failed to comply with CR 56(e) as an oversight or intentional, aiming to avoid violating subsection (g)'s prohibition against submitting affidavits in bad faith. Regardless, merely attaching information to a motion for summary judgment does not satisfy the requirements of CR 56(e). *In re Estate of Ferara*, 540 P.3d 194, 203 (2023). As the nonmoving party, McFarland carried a burden to present facts with admissible evidence to demonstrate a genuine issue for trial. *In re Estate of Ferara*, 540 P.3d 194, 203. The trial court did not err when striking her response and treating PNWU's motion for summary judgment as unopposed.

After reviewing the admissible evidence submitted by PNWU, we conclude that the superior court also correctly granted the summary judgment motion. PNWU's uncontraverted evidence established that the university did not terminate Amy

11

No. 39550-2-III
*McFarland v. Pacific Northwest University Health Sciences*

McFarland's employment because of pregnancy, gender, harassment, or retaliation, but because of a budget deficit.

CONCLUSION

We affirm the superior court's summary judgment dismissal of Amy McFarland's lawsuit.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, J.

_____
Cooney, J.