IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHELLEY ANN ERICKSON,<br><br>　　　　　　　Appellant,<br><br>　　　v.<br><br>MELANIE KELLIAINEN and<br>AMANDA KELLIAINEN, in their<br>individual capacities,<br><br>　　　　　　　Respondents. | No. 87611-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Shelley Erickson, a beneficiary of her mother's trust, appeals the trial court's order that granted summary judgment dismissal of her complaint that alleged undue influence and other causes of action. Because the trial court did not err, we affirm.

FACTS

Margaret Tullis died on February 26, 2021, at the age of 90. Margaret had four children: Shelley Erickson, Mark Tullis, Kent Tullis, and Melanie Kelliainen.

In February 2014, Margaret executed a last will and testament (2014 Will) that bequeathed her tangible personal property to Melanie and her home in trust to Melanie for life, with the remainder to be distributed equally between Shelley,

Mark, Kent, and Melanie.[1]  In August 2016, Melanie moved into the home and became Margaret's primary caregiver.

In early 2019, Margaret met with her attorney Dallas Jolley to discuss revisions to her estate plan.  The meeting took place at Margaret's home.  Margaret stated that her son Mark had done well for himself and did not want an inheritance.  At Margaret's direction, Jolley prepared a revocable living trust and pour-over will (2019 Trust Agreement).  The trust designated Margaret and her granddaughter Amanda Kelliainen as co-trustees.  The 2019 Trust Agreement gifted Margaret's home to Melanie and distributed the residue of the trust equally between Shelley, Kent, and Melanie.  Because the 2019 Trust Agreement split the residue among three siblings rather than four, this change increased Shelley's inheritance as compared to the 2014 Will.

Margaret was subsequently hospitalized and diagnosed with atrial fibrillation.  On March 19, 2019, while recovering at Valley Medical Center, Margaret signed the 2019 Trust Agreement in the presence of Jolley, his wife Kristen Black, and a notary.  After the 2019 Trust Agreement was signed, Margaret asked Jolley to amend the 2019 Trust Agreement to prevent Melanie's and Shelley's creditors from receiving any funds.  At Margaret's direction, Jolley prepared an amendment to the trust that directed Melanie's share to her daughter Amanda and Shelley's share to her daughter Rachelle.  On June 24, Jolley met Margaret at the hospital and witnessed her signing the trust amendment.

---

[1] Because this matter involves many parties who share common surnames, we refer to the parties by their first names for clarity.  No disrespect is intended.

Upon Margaret's passing on February 26, 2021, Amanda became sole trustee of Margaret's trust. Almost three years later, on February 23, 2024, Shelley filed a pro se complaint against Melanie and Amanda "for elderly abuse and extortion and mis use [sic] of their positions [sic] undue influence." (Capitalization omitted.) The complaint alleged that thirteen years earlier, Margaret told Shelley that she was giving her house and property to Melanie and all of her savings and money to Shelley. Based on this apparent expectation, the complaint alleged that Margaret lacked capacity when she signed the 2019 Trust Agreement and Melanie and Amanda "extorted" her inheritance through undue influence. The complaint further alleged that Melanie and Amanda financially abused Shelley, committed elder abuse of Margaret, concealed where the trust was filed, violated their fiduciary duty to the estate, and forged a deed that transferred the title to the trust. The request for relief in the complaint asked the court to grant "the ill-gotten gains" from Margaret's estate to Shelley.

Melanie and Amanda moved for summary judgment dismissal of Shelley's complaint, arguing that her trust challenge was barred by the statute of limitations and she lacked evidence of undue influence or exploitation of a vulnerable adult. In support of the motion, Melanie and Amanda attached their own declarations and the declarations of their attorney Meghan Gross, Margaret's son Mark, attorney Jolley, and witness Black. In opposing summary judgment, Shelley relied primarily on a series of text messages between Melanie and Shelley and Margaret's death certificate. Shelley also moved to strike various declarations. At the hearing on summary judgment, the trial court denied the motions. The trial court then granted

summary judgment and dismissed Shelley's complaint. The court subsequently denied Shelley's motion for reconsideration.

Shelley timely appealed.[2]

ANALYSIS

I.      Standard and Scope of Review

This court reviews summary judgment orders de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

A defendant moving for summary judgment bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party satisfies this initial showing, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The nonmoving party may not rely on speculation, argumentative assertions, or unsupported affidavits. *Becker v. Wash. State Univ.*, 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011). Summary judgment is proper if reasonable persons could reach but one conclusion from all the evidence.

---

[2] In her opening brief, Shelley asks this court to strike all documents and arguments filed by counsel for Melanie and Amanda that were "argued . . . without personal knowledge." The motion is hereby denied.

*Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

We observe that Shelley appeals pro se, consistent with her self-representation in the trial court. While we acknowledge the difficulties of self-representation, "'the law does not distinguish between one who elects to conduct [their] own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.'" *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)). Additionally, this court will not generally consider arguments that a party does not support with references to the record, meaningful analysis, or citation to pertinent authority. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Melanie and Amanda argue that Shelley's challenge to the validity of the 2019 Trust Agreement and amendment is barred by the statute of limitations. We agree. RCW 11.103.050(1)(a) allows for "a judicial proceeding to contest the validity of a trust that was revocable at the trustor's death" within 24 months after the trustor's death or 4 months after the trustee provides special notice as detailed in RCW 11.103.050(1)(b). It is undisputed that Margaret died on February 26, 2021 and Shelley filed her complaint almost three years later. Shelley's claims challenging the validity of the 2019 Trust Agreement are barred by the statute of

limitations, and Melanie and Amanda were entitled to summary judgment dismissal of those claims as a matter of law.[3]

II.     Elder Abuse and Financial Abuse

Shelley contends that the trial court erred when it dismissed her claims against Melanie and Amanda for "elder abuse" and "financial abuse." She contends that the evidence shows Melanie and Amanda committed financial abuse and elder abuse against both Margaret and Shelley by extorting Shelley's promised inheritance through undue influence. To the extent Shelley's claims of vulnerable adult abuse under chapter 74.34 RCW are distinct from her challenge to the validity of Margaret's trust, they are not among the time-barred claims addressed *supra*. Even still, these claims fail.

Washington's abuse of vulnerable adults act, chapter 74.34 RCW, establishes a cause of action for damages for "injuries, pain and suffering, and loss of property" when a "vulnerable adult" has been "subjected to abandonment, abuse, financial exploitation, or neglect either while residing in a facility or in the case of a person residing at home who receives care from a home health, hospice, or home care agency, or an individual provider." RCW 74.34.200(1). The act defines "vulnerable adult" as a person:

>     (a)     Sixty years of age or older who has the functional, mental, or physical inability to care for [themselves]; or

---

[3] Shelley argues that the text messages and death certificate created an issue of material fact regarding testamentary capacity, undue influence, and Melanie and Amanda's alleged misbehavior. Shelley also argues that the trial court improperly relied on evidence submitted by Melanie and Amanda in violation of the "Dead Man's statute," RCW 5.60.030, and the advocate-witness rule, RPC 3.7. Because Shelley's challenge to the validity of the trust is time-barred, we need not consider these arguments further.

(b)     Subject to a guardianship under RCW 11.130.265 or adult subject to conservatorship under RCW 11.130.360; or
(c)     Who has a developmental disability as defined under RCW 71A.10.020; or
(d)     Admitted to any facility; or
(e)     Receiving services from home health, hospice, or home care agencies licensed or required to be licensed under chapter 70.127 RCW; or
(f)     Receiving services from an individual provider; or
(g)     Who self-directs [their] own care and receives services from a personal aide under chapter 74.39 RCW.

RCW 74.34.020(21).  RCW 74.34.020(7) further defines "[f]inancial exploitation" as "the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage."

Shelley provides no evidence that she was a vulnerable adult under RCW 74.34.020(21) when she presented that cause of action.  Although Shelley asserts that she is over sixty years of age, and we accept that contention as true for purposes of our analysis, she does not allege that she lacks the "functional, mental, or physical inability to care for . . . herself."  *See* RCW 74.34.020(21)(a).  Nor is there evidence that Shelley meets any of the other statutory criteria.  In any event, Shelley is not entitled to treat an alleged inheritance expectation as her property.  *See In re Est. of Peterson*, 12 Wn.2d 686, 734, 123 P.2d 733 (1942) ("Only after an estate has been closed can the heirs, by acquiring these additional rights in the property, become entitled to treat it as their own.").  Even assuming that Margaret qualified as a "vulnerable adult" under RCW 74.34.020(21)(a), "a claim of financial exploitation requires injury to the vulnerable adult [her]self, not to h[er] estate."  *In*

*re Est. of Kolesar*, 27 Wn. App. 2d 166, 184, 532 P.3d 170 (2023) (citing RCW 11.84.160(1)(a)). Summary judgment dismissal of these claims was proper.

III.     Due Process

Shelley also argues broadly that the trial court violated her due process right under the Washington Constitution to fully present her case. The record does not support her argument.

"'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *In re Est. of Little*, 9 Wn. App. 2d 262, 281, 44 P.3d 23 (2019) (internal quotation marks omitted) (quoting *Aiken v. Aiken*, 187 Wn.2d 491, 501, 387 P.3d 680 (2017)). Without identifying or applying the relevant constitutional analysis, Shelley asserts that the trial court ignored the text message and death certificate evidence and denied her right to file all the text messages to fully present her case. But the record amply shows that the trial court afforded Shelley a full and fair opportunity to present her evidence and legal arguments. At the summary judgment hearing, the trial court observed that "[t]here are a lot of texts" and appropriately asked Shelley whether there was "a particular text you really want me to focus on." The court did not exclude the text messages or death certificate from evidence. Shelley also argues that the trial court violated due process by ruling in Melanie and Amanda's favor and dismissing her claims on summary judgment without a jury trial. No authority supports the proposition that an adverse outcome is inherently unfair.

IV. Attorney Fees

Melanie and Amanda request attorney fees and costs on appeal under RAP 18.1, RCW 11.96A.150(1), and RAP 18.9. We may award reasonable attorney fees on appeal to a party that makes such a request in their opening brief, provided that applicable law authorizes such an award. *See* RAP 18.1.

"RCW 11.96A.150(1) grants broad discretion to courts to award attorney fees 'in such manner as the court determines to be equitable' in 'all proceedings governed by this title,' i.e. under Title 11." *In re Est. of Berry*, 189 Wn. App. 368, 379, 358 P.3d 426 (2015). This court may consider the request for fees in light of "any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(1).

Under RAP 18.9(a), we may award attorney fees and costs as sanctions for a frivolous appeal. *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). "'An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal.'" *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009) (quoting *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007).

Shelley's appeal did not benefit the estate and presents no debatable issues on which reasonable minds might differ. We exercise our discretion to award attorney fees and costs to Melanie and Amanda under RCW 11.96.150(1) and

RAP 18.9, to be paid by Shelley, upon their continued compliance with the procedural requirements of the RAPs.

Affirmed.

WE CONCUR: